# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JUAN CARLOS PERAZA,               )
                                  )
    Plaintiff,                    )
                                  )
        v.                        )            1:13CV881
                                  )
RENT-A-CENTER,                    )
                                  )
    Defendant.                    )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

The instant matter comes before the undersigned United States Magistrate Judge for a recommended ruling on Defendant's Motion to Dismiss (Docket Entry 9). (See Docket Entry dated Dec. 13, 2013.) For the reasons that follow, the instant Motion should be granted.

## I. Background

Plaintiff, proceeding pro se, brought this suit against Defendant for unlawful employment discrimination and retaliation based on Plaintiff's race and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended. (Docket Entry 2 at 2-4.) The Complaint alleges that, while employed with Defendant, Plaintiff complained that his supervisors discriminated against Hispanic customers. (Id. at 2-3.) It further asserts that Defendant did nothing to correct any such discriminatory behavior and, additionally, that Plaintiff's supervisor began to retaliate against Plaintiff after his complaints by writing him up for tardiness and leaving early. (Id. at 3.) According to the

Complaint, the supervisor did not similarly discipline other, non-Hispanic employees for the same conduct. (Id.) After Plaintiff reported the supervisor's behavior to the Human Resources Department, Defendant terminated his employment. (Id. at 4.) Based on these allegations, Plaintiff requests "neutral references from [Defendant], in order to get a new job," "payback" (presumably "back pay"), and compensatory damages. (Id. at 5.)

Defendant thereafter filed the instant Motion requesting that the Court dismiss this case and order Plaintiff to arbitration pursuant to an Arbitration Agreement Plaintiff signed in the course of his employment with Defendant or, alternatively, that the Court stay these proceedings and compel arbitration. (See Docket Entry 10 at 13.) Plaintiff responded (Docket Entry 12) and Defendant replied (Docket Entry 13).

## II. Discussion

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, establishes "a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Under the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "mandates that district

courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. . . . Thus, . . . agreements to arbitrate must be enforced . . . ." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original). In determining whether to compel arbitration, a court should consider:

> "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute."

Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002) (quoting Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)).

In this case, Defendant has come forward with undisputed evidence that Plaintiff executed an Arbitration Agreement when he began his employment with Defendant. (See Docket Entry 9-1 at 3, 5-9; see also Docket Entry 12 at 1 (setting out Plaintiff's acknowledgement that he signed "Arbitration Documents").)[1] The Arbitration Agreement states that "[Defendant] and [Plaintiff] mutually consent to the resolution by arbitration of all claims or

---

[1] All pin citations refer to the pagination in the footer appended to each document by the CM/ECF system. Given the absence of any dispute as to Plaintiff's execution of the Arbitration Agreement, this case does not present "the issue [of] whether any agreement between the parties 'was ever concluded,'" Rent-A-Center, West, Inc. v. Jackson, 130 S. Ct. 2772, 2778 n.2 (2010).

-3-

controversies [], past, present or future, including without limitation, claims arising out of or related to [Plaintiff's] application for employment, assignment/employment, and/or the termination of [Plaintiff's] assignment/employment . . . ." (Docket Entry 9-1 at 5.) The types of claims covered by the Arbitration Agreement include "tort or statutory claims for discrimination (including, but not limited to race, sex, sexual harassment, sexual orientation, religion, national origin, age, workers' compensation, marital status, medical condition, handicap or disability) . . . and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance, except claims excluded in the section of this Agreement entitled 'Claims Not Covered by the Agreement.'" (Id.)[2]

As Defendant points out, "Plaintiff also agreed to arbitrate gateway issues of arbitrability." (Docket Entry 10 at 2.) In this respect, the Arbitration Agreement states that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any

---

[2] The section of the Arbitration Agreement entitled "Claims Not Covered by the Agreement" states that claims for "workers' compensation benefits, state disability insurance benefits and unemployment compensation benefits are not covered by this Agreement." (Docket Entry 9-1 at 5.) It also excludes "[c]laims brought in small claims court . . . so long as such claims are brought only in that court." (Id.)

part of this Agreement is void or voidable." (Docket Entry 9-1 at 7.)  Plaintiff's initials appear on each page of the Arbitration Agreement and his signature appears on the final page.  (Id. at 5-9.)

The United States Supreme Court has "recognized that parties can agree to arbitrate 'gateway' questions of arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  Rent-A-Center, West, Inc. v. Jackson, 130 S. Ct. 2772, 2777 (2010).

> An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.  The additional agreement is valid under § 2 "save upon such grounds as exist at law or in equity for the revocation of any contract," and federal courts can enforce the agreement by staying federal litigation under § 3 and compelling arbitration under § 4.

Id. at 2777-78.

Under Section 2, two types of challenges exist to the validity of an arbitration agreement: the first "challenges specifically the validity of the agreement to arbitrate" and the second "challenges the contract as a whole, either on a ground that directly affects the entire agreement . . . or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid."  Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 (2006).  When an arbitration agreement includes an agreement, like the one present in the instant case, to arbitrate gateway

issues, only the first type, a challenge to the validity of the agreement to arbitrate such issues, "is relevant to a court's determination whether the arbitration agreement at issue is enforceable." Jackson, 130 S. Ct. at 2778. In other words, "[i]f a party challenges the validity under § 2 of the precise agreement to arbitrate [gateway questions], [the Court] must consider the challenge before ordering compliance with that agreement under § 4." Id. However, where the specific agreement to arbitrate gateway issues remains unchallenged, the Court "must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity [or applicability] of the Agreement as a whole for the arbitrator." Id. at 2779.

In opposition to the instant Motion, Plaintiff argues that he "never got a copy of the documents that [he] signed ('Arbitration Documents') where it was [sic] the information about the letter [required to initiate the arbitration process] and the address where it was supposed to be sent . . . ." (Docket Entry 12 at 1.) In addition, Plaintiff appears to contend that this case should remain before this Court, "not only because it is a discrimination employment matter, but [because] it is also discrimination against a minority group (Hispanic/Latinos) that has been victims [sic] of abuses (with overcharges and false information) because lack of language (English), and fear to [sic] retaliation." (Id. at 2.) Neither of these contentions challenge the validity of the Parties'

agreement to arbitrate gateway issues.  Rather, both relate to the enforceability and applicability, respectively, of the Arbitration Agreement as a whole, challenges which Plaintiff agreed to allow the Arbitrator to resolve (see Docket Entry 9-1 at 7).  This Court thus lacks jurisdiction to hear any such challenges.  As a result, the Court should grant Defendant's instant Motion and should dismiss this case.[3]

### III.  Conclusion

Plaintiff agreed to submit the types of challenges he raises here to arbitration and has identified no lawful basis to circumvent that process.

**IT IS THEREFORE RECOMMENDED** that Defendant's Motion to Dismiss (Docket Entry 9) be granted in that the Court should order Plaintiff to submit his claims to arbitration in accordance with the terms of the Arbitration Agreement and should dismiss this case.


                                    /s/ L. Patrick Auld
                                    **L. Patrick Auld**
                              **United States Magistrate Judge**

January 8, 2014

---

[3] "[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001) (citing Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (4th Cir. 1992)).